# UNITED STATES DISTRICT COURT

for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| SUBJECT LOCATION #1, SUBJECT LOCATION #2, and SUBJECT VEHICLE more fully described in Attachment A. | ) ) ) ) |

```
_____ FILED _____ LODGED
_____ RECEIVED

Apr 27, 2020

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY
```

Case No.  MJ20-5091

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846; 18 U.S.C. § 924(c)(1)(A) | Distribution, possession with intent to distribute, and conspiracy to distribute controlled substances; Carrying or possessing a firearm in furtherance of drug trafficking |

The application is based on these facts:

✓ See Affidavit of FBI Special Agent Benjamin Harrison, incorporated herein by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

BENJAMIN HARRISON, Special Agent FBI
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  4/26/20

*Judge's signature*

City and state:  Tacoma, Washington

J. RICHARD CREATURA, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

STATE OF WASHINGTON    )
                       )        ss
COUNTY OF PIERCE       )

I, Benjamin Harrison, being duly sworn, state:

## INTRODUCTION

1.      I am and have been a Special Agent (SA) of the United States Department of Justice, Federal Bureau of Investigation (FBI) since February 2015.  I am currently assigned to the Tacoma Resident Agency of the Seattle Field Office, and serve as the Coordinator of the South Sound Gang Task Force (SSGTF).  In these capacities, I have participated in multiple felony arrests and investigations.

2.      I have received formal training at the FBI Academy in Quantico, Virginia. The Academy included several hundred hours of comprehensive, formalized instruction in, but not limited to, narcotics, gangs, and financial investigations.  While working with the SSGTF, I have attended training specific to gang and narcotics activity in Washington State.

3.      As a Special Agent with FBI, my duties and responsibilities have included conducting criminal investigations for possible violations of federal law including violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution, possession with intent to distribute, and conspiracy to manufacture or distribute controlled substances), and violations of Title 18, United States Code, Sections 922(g)(1) and 924(c)(1)(A) (felon in possession of a firearm, and carrying or possessing a firearm in furtherance of drug trafficking).  I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am authorized by law to conduct investigations and to make arrests for felony offenses.

4.      I have also spoken to, and worked with, more experienced federal, state and municipal law enforcement agents and officers on a variety of criminal investigations.

HARRISON AFFIDAVIT/USAO # 2020R00016

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

These investigations have involved the use of confidential informants, wire and physical surveillances, telephone toll analysis, investigative interviews, and the service of search and arrest warrants.  These investigations include the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses, in violation of federal law.  As a result of my participation in these investigations, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances.

5.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.  This Application is being presented by reliable electronic means pursuant to Federal Rule of Criminal Procedure 41(d)(3) and Local Criminal Rule 41(d)(3).

6.      Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution, possession with intent to distribute, and conspiracy to manufacture or distribute controlled substances), and violations of Title 18, United States Code, Sections 924(c)(1)(A) (carrying or possessing a firearm in furtherance of drug trafficking), will be found in the apartment located at 1907 105th Street S, #D201, Tacoma, Washington (SUBJECT LOCATION #1), the single family

home located at 1811 S 90th Street, Tacoma, Washington (SUBJECT LOCATION #2), and a blue 2006 Volkswagen Passat, VIN: WVVEK93C96P202376 (SUBJECT VEHICLE). The apartment, house, and vehicle are further described below and in Attachment A, which is attached to this Affidavit and incorporated herein by reference.

## IDENTIFICATION OF THE ITEMS TO BE SEARCHED

7.      This Affidavit is submitted in support of an application for a warrant to search the apartment identified herein as SUBJECT LOCATION #1, the single family home identified as SUBJECT LOCATION #2, and the Volkswagen Passat identified as SUBJECT VEHICLE, as further described below and in Attachment A, for evidence, fruits, and instrumentalities, as further described in Attachment B, of violations of the Title 21 and Title 18 above-described crimes committed by JALEN EARL MOOREHEAD:

a.      SUBJECT LOCATION #1: The apartment located at 1907 105th Street S, #D201, Tacoma, Washington. The apartment is within a complex known as the Heatherstone Apartments. Building D is a three story building which is two-tone blue in color with white trim. Apartment 201 of Building D is located on the second floor, on the West end of the building. The door of Apartment 201 is blue in color and has the number "201" in white on it.

b.      SUBJECT LOCATION #2: The single family home located at 1811 S 90th Street, Tacoma, Washington. The house is a two story building which is light blue in color with white trim. The front door is white and faces south. The number "1811" is in black to the right of the front door.

c.      SUBJECT VEHICLE: A blue 2006 Volkswagen Passat, VIN: WVVEK93C96P202376, bearing Washington license plate BSA2916, which is registered to Taneisha Marie Enick.

## THE INVESTIGATION

### February 9, 2019 Arrest

8.      On February 9, 2019, at approximately 12:11 a.m., an Auburn Police Department (APD) unit was in the City of Auburn, Washington, when a black, 2018 Nissan Altima (bearing Oregon license plate 088KRY) was observed traveling without

working tail lamps during overnight hours.  APD initiated a traffic stop and contacted the driver, later identified as JALEN MOOREHEAD.  When first questioned, MOOREHEAD stated he did not have identification with him and provided the name of his brother, Jaquan Moorehead.  The APD officer smelled the distinct odor of marijuana, and requested another officer respond to their location to assist with the administration of field sobriety tests.  The vehicle was determined to belong to Enterprise Rental.

9.   While researching the name Jaquan Moorehead, APD determined MOOREHEAD had provided a false name.  When confronted, MOOREHEAD continued to lie and began exhibiting pre-flight behaviors, such as looking around for avenues of escape.  After being placed into handcuffs, he confessed that his true name was JALEN MOOREHEAD, and he lied because he knew he had an active arrest warrant.  APD confirmed MOOREHEAD had active warrants for Driving While License Suspended, and Hit and Run of an Attended Vehicle.  In a search of MOOREHEAD's person incident to arrest, he was found to have a significant amount of cash in his pockets.

10.   APD observed a significant amount of cash in plain view near the vehicle's center console, which was later determined to be $12,851.  MOOREHEAD explained that the cash was from a recent settlement after a motor vehicle collision.  At some point during the traffic stop, MOOREHEAD's girlfriend, Tanika Tsow, arrived on scene and requested to retrieve some of her personal property from the vehicle.  As APD was assisting Tsow with the retrieval of some of her clothing from the backseat, they observed a significant amount of cash in an interior pocket of the driver's door. Consistent with APD policy, they started an inventory of the vehicle because it was going to be towed.  During the inventory, APD discovered a ziplock bag in the center console containing what appeared to be heroin.  After discovering the bag of apparent heroin, APD stopped the inventory and sealed the vehicle, pending application of a search warrant.

11.   A State search warrant for the Altima was obtained by APD and executed later on February 9, 2019.  APD located cash in several locations in the vehicle: $4,771 in

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

the glove compartment, $908 in the center console, $700 in the trunk, and $1006 in the interior pocket of the driver's door.  Under the driver's seat were four bags of pills: one bag contained 25 green tablets, one bag contained 42 brown tablets, the third bag contained 214 blue tablets, and the fourth bag contained 340 brown and blue tablets.  The four bags contained a total of 621 pills which field-tested positive for MDMA (ecstasy), but which were later determined by the Washington State Patrol Crime Laboratory to contain methamphetamine.  Near the pills under the driver's seat was a Glock 27 .40 caliber semi-automatic pistol, bearing serial number VDE774, which had an inserted magazine containing 16 live rounds and one live round in the chamber.  In an interior pocket of the driver's door, APD located a bag containing 20.2 grams of suspected cocaine, and a bag containing 25.5 grams of suspected heroin.  On the front passenger's seat was a bag containing 7.3 grams of suspected heroin, which had initially been found in the center console during the inventory.  The cocaine and heroin both field-tested positive.  APD seized a total of $20,236 from the vehicle, not including the amount found on MOOREHEAD's person at arrest.  Narcotics packaging items such as clear and multi-colored ziplock bags were also seized from the vehicle.

### June 6, 2019 Arrest

12.      On June 6, 2019, at approximately 1:50 p.m., a Pierce County Sheriff's Department (PCSD) unit was conducting a burglary investigation in the vicinity of the 8700 block of Hosmer Street in Tacoma, Washington.  In the parking lot of the Econolodge, 8820 Hosmer Street, they observed a black, 2010 BMW 750LI (bearing Washington State license plate BMZ9457).  PCSD performed a database query of the BMW's license plate and learned that there was a failure to transfer the title within 45 days, which was a violation of Washington State law.  When PCSD initiated a traffic stop, the BMW immediately parked and a male later identified as JALEN MOOREHEAD exited the driver's seat.  PCSD deputies requested MOOREHEAD get back into the car, but he refused and instead looked around the area nervously.  As PCSD deputies approached the BMW, they observed, from outside the car, a black, semi-

automatic pistol in plain view on the driver's seat.  MOOREHEAD was then handcuffed for safety reasons.  MOOREHEAD initially told deputies his name was Jacob E. Morrison.  PCSD performed a database query of the name, but could not locate a record or driver's status which matched, so MOOREHEAD was placed under arrest for Obstructing/Providing a False Statement, which is a violation of Washington State law.

13.     During a search of MOOREHEAD's person incident to arrest, PCSD located a sandwich bag containing 734 blue pills which they identified as Oxycodone Hydrochloride 30 milligrams, and $4,176 in varying denominations of cash. MOOREHEAD stated the pills were "like Adderall," and he did not require the pills for a medical condition.  He advised PCSD the cash was from a settlement he won related to a collision.  He further stated he found the firearm in the vehicle's glovebox and that it was not his.

14.     PCSD confirmed MOOREHEAD's identity and that he was classified as a convicted felon, with his most recent convictions for Residential Burglary and Possession of a Controlled Substance.[1] MOOREHEAD was booked into Pierce County Jail for Felon in Possession of a Firearm, Possession of Narcotics with Intent to Distribute, Obstruction, and Failure to Transfer Title Within 45 Days.  While being booked, deputies located an additional $230 in varying denominations of cash, inside his shorts, which were under his sweats.  The BMW was sealed and towed to a secure PCSD lot pending a search warrant.

15.     A search warrant for the BMW obtained by PCSD was executed on June 7, 2019.  On the front passenger seat was a gray and pink duffel bag.  Inside the main compartment of the duffel bag was a bag of blue pills (weighing approximately 247 grams), a bag of green pills (approximately 244 grams), $175, and an orange grocery bag. Inside the grocery bag was $26,105 in varying denominations of cash and coin.  In an outer pocket of the gray and pink duffel bag was a bag of yellow pills (approximately 249 grams), and a bag of green pills (approximately 269 grams).  In the glovebox of the

---

[1] These appear to be juvenile adjudications for felonies.

HARRISON AFFIDAVIT/USAO # 2020R00016

BMW was a prescription bottle for "Carlos Shaw" for Hydrochlorothiazide[2] (24 of 25mg), and an invoice for the BMW with MOOREHEAD's name on it.  In the back pocket of the front passenger's seat were medical documents with MOOREHEAD's name on them, and a digital scale.  On the driver's seat was a Glock 45, 9mm semi-automatic pistol, serial number BKDM969, containing 16 live rounds in the magazine and one live round in the chamber.  This pistol was later confirmed to be stolen.  In a pocket inside the driver's door was $692 in varying denominations of cash and coin.

16.     Subsequent testing by a Forensic Scientist at the Washington State Patrol Crime Laboratory determined that a sampling of pills from each group of pills above (aggregate total of approximately 3,802 pills) contained methamphetamine.

**October 29, 2019 Incident (not charged)**

17.     On October 29, 2019, at approximately 2:30 p.m., a Washington State Patrol (WSP) unit was conducting routine patrol on Northbound Interstate 5 near Lacey, Washington, when a silver Nissan Altima was observed traveling approximately 72 mph in a 60 mph zone.  WSP initiated a traffic stop, and the vehicle pulled over near milepost 106.  When the WSP Trooper contacted the driver, he smelled marijuana and observed an open red cup in plain view in the vehicle which contained a substance which appeared to be marijuana.  The Trooper advised the driver, later identified as JALEN MOOREHEAD, that the marijuana needed to be stored in a secure manner while driving.  The Trooper suggested securing the marijuana in the trunk of the vehicle, to which MOOREHEAD agreed.

18.     When MOOREHEAD exited the vehicle, and while attempting to open the trunk lid, the Trooper noted that MOOREHEAD was acting in an extremely nervous manner, and apologizing repeatedly.  When MOOREHEAD voluntarily opened the trunk, the Trooper observed a backpack underneath a coat.  When the Trooper asked MOOREHEAD what was in the backpack, MOOREHEAD hesitantly opened it to reveal

[2] According to WebMD.com, this is a diuretic that is used to treat high blood pressure.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

a red shoe box.  The Trooper suggested securing the marijuana in the shoe box, but MOOREHEAD indicated he would rather just throw the marijuana away. MOOREHEAD continued acting nervous, and stated there were shoes in the shoe box. MOOREHEAD briefly opened the shoe box and before he closed it, the Trooper observed 5 or 6 plastic bags inside.  The Trooper asked exactly what was in the shoe box, but MOOREHEAD refused to answer.  Believing the plastic bags contained contraband, the Trooper attempted to secure the shoe box and open the lid.  MOOREHEAD immediately grabbed the contents of the box and fled on foot, north along the shoulder of the road.  The Trooper gave verbal commands for MOOREHEAD to stop, but he continued to flee.  The Trooper observed MOOREHEAD drop some of the contents of the box, stop to retrieve a portion of them, and then jump over a fence before getting away on foot.

19.     When additional WSP units arrived, MOOREHEAD's path of flight was followed, and a tinfoil-wrapped square was found near the fence line.  A tear in the foil revealed a chalky white powder block inside.  When later weighed, this tinfoil-wrapped block of white powder was found to weigh 186 grams.  WSP also noted open marijuana in the passenger compartment of the Altima, and packaging material inside the shoe box which came out of the backpack in the trunk.  The Altima was towed to a secure lot, pending a search warrant.

20.     A search warrant for the Altima was obtained by WSP on October 31, 2019.  In the center console was a prescription bottle with liquid Codeine, a prescription bottle for Oxycodone Acetaminophen with two pills in it, and a credit or debit card in the name of Jalen Moorehead.  Underneath the driver's side back seat was a digital scale. Inside the trunk was a blue backpack, which contained a digital scale with white powder residue on it, and $489 in varying denominations of cash.  Also in the trunk was a red coat.  In a pocket of the coat were 28 pills with "M30" markings, which is consistent with Oxycodone Hydrochloride.

HARRISON AFFIDAVIT/USAO # 2020R00016

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**Subject Location #1**

21.     A review of open source databases identified 1907 105th Street S, Tacoma, Washington, as the most recent address for MOOREHEAD.  MOOREHEAD has been associated with the location since November 18, 2019.  The address corresponds with Building D of the Heatherstone Apartments, located at 1809 105th Street Court, South, Tacoma, Washington.  No unit number is provided in the open source record associated with MOOREHEAD.

**Surveillance of JALEN MOOREHEAD**

22.     On December 31, 2019, MOOREHEAD was observed in the Walmart located at 1965 S Union Avenue, Tacoma, Washington, with an unknown female.  MOOREHEAD exited the Walmart and was observed entering the driver's seat of the black, 2001 Mercedes 430 sedan bearing Washington State license plate 198ZJA.  The unknown female entered the front passenger's seat of the vehicle.  MOOREHEAD drove out of the Walmart parking lot and surveillance was terminated.

23.     An initial records check indicated the registered owner of the Mercedes was Moises and Rowena Villanueva.  Later records checks indicated the title for the Mercedes was transferred to MOOREHEAD on January 28, 2020.

24.     On January 16, 2020, MOOREHEAD was observed sitting in the driver's seat of the Mercedes, while it was parked in the lot of the Heatherstone Apartments.  After approximately 50 minutes, MOOREHEAD exited the vehicle and walked into the western most stairwell of Building D.  Building D also has its own address of 1907 105th Street S, Tacoma, Washington.

25.     On January 23, 2020, the Mercedes was observed pulling into the Heatherstone Apartments.  Surveillance was unable to identify any occupants of the vehicle, and it parked in a location which was not visible to surveillance.  Less than 30 seconds after losing sight of the Mercedes, MOOREHEAD and an unknown male were observed on the sidewalk as they walked into the western most stairwell of Building D.  Surveillance moved to the north of the building and maintained a visual on the back side

of Building D, where the second-story light on the northwest side of the building turned on moments later.  A placard located on the front of the building identified the second-story, western most apartment, as Unit 201.  The Mercedes was found parked in the area from which MOOREHEAD and the unknown male were walking away from when observed entering the stairwell of Building D.

26.     On March 11, 2020, Superior Court Judge Grant Blinn in Pierce County, Washington signed an Order for Pen Register/Trap and Trace, and location information for a cellular phone believed to be used by MOOREHEAD.  The Order authorized the FBI and Pierce County Sheriff's Department to obtain the specified information from March 11, 2020 through May 9, 2020.

27.     Physical surveillance by the SSGTF and FBI, some of which is described below, verified the location of the cellular phone being tracked was consistent with the movements of MOOREHEAD and no other individuals.

28.     On March 23, 2020, MOOREHEAD was observed exiting SUBJECT LOCATION #1 with three other males.  MOOREHEAD had a ring of keys in his hand as he approached the blue Volkswagen Passat bearing Washington license plate BSA2916 (SUBJECT VEHICLE), which was parked, unoccupied, in the lot of the Heatherstone Apartments.  MOOREHEAD accessed the front passenger's door of the vehicle, leaned inside for a few seconds, and then closed the door and walked away.  He entered the front passenger's seat of a separate vehicle driven by one of the males he exited SUBJECT LOCATION #1 with, and they departed the parking lot.

29.     A records check indicated the registered owner of the SUBJECT VEHICLE was Taneisha Marie Enick.  An additional records check indicated Enick had address history at 1811 S 90th Street, Tacoma, Washington (SUBJECT LOCATION #2).

30.     On March 24, 2020, the SUBJECT VEHICLE was observed parked, unoccupied, outside SUBJECT LOCATION #2.  Members of the SSGTF conducted physical surveillance of the residence and observed multiple "short stay" visitors:

- 1:00 p.m. – white Jeep Wrangler (bearing Washington license plate BIP4753) parked in front of residence. An adult female exited the Jeep, knocked on the front door of the house, and was let inside after a short wait. The same female exited the residence approximately 14 minutes later and departed in the Jeep.
- 1:45 p.m. – white Chrysler Town and Country minivan (bearing Washington license plate 608ZIG) parked in front of residence. A white male, later identified as Jeffrey L. Johnson, the registered owner of the minivan, exited the front passenger's seat, knocked on the front door of house, and was let inside after a short wait. Johnson exited the residence approximately seven minutes later and departed in the minivan. Johnson has two separate, previous Washington State felony convictions for Unlawful Delivery of a Controlled Substance. In both cases, Johnson had significant amounts of Oxycodone.
- 1:54 p.m. – white Toyota Camry (bearing Washington license plate AIE3079) parked in front of residence. MOOREHEAD exited SUBJECT LOCATION #2 and entered the Camry. The vehicle drove approximately two blocks away, then returned to the residence. MOOREHEAD exited the Camry and let himself back into SUBJECT LOCATION #2. The Camry departed the area.

31.     Minutes after the last of the above short stays, a female exited SUBJECT LOCATION #2 and entered the front passenger's seat of the SUBJECT VEHICLE. MOOREHEAD exited the residence shortly after her, and entered the driver's seat. MOOREHEAD drove the two to Tacoma General Hospital, 315 MLK Jr Way, Tacoma, Washington. The vehicle pulled into a recessed, valet or drop-off area, and surveillance terminated.

32.     On March 25, 2020, the SSGTF conducted additional physical surveillance at SUBJECT LOCATION #2. At approximately 3:30 p.m., MOOREHEAD and the same female from the previous day exited the residence. The female was dressed in a scrubs uniform. The female entered the front passenger's seat and MOOREHEAD entered the driver's seat of the SUBJECT VEHICLE. MOOREHEAD again drove the two to Tacoma General Hospital, 315 MLK Jr Way, Tacoma, Washington. After pulling in briefly to the same recessed parking area as the day before, MOOREHEAD was observed driving the SUBJECT VEHICLE away from the hospital, alone.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

33.     After leaving the hospital, MOOREHEAD drove to Discount Auto Sales and Service Center, 12001 Pacific Highway SW, Lakewood, Washington.  Employees of the business appeared to service the vehicle while MOOREHEAD walked and danced around the parking lot for approximately one hour.  While under observation in the parking lot, MOOREHEAD was holding a dark blue backpack with a yellow zipper or yellow stitching around the zipper, and an outer pocket which was red.

34.     When MOOREHEAD left Discount Auto Sales and Service Center, he drove to the parking lot of SUBJECT LOCATION #1.  Upon arriving at the Heatherstone Apartments, he remained sitting in the SUBJECT VEHICLE.  After a few minutes, Raymone Leblanc drove into the parking lot in the black Chrysler 300 (bearing Washington license plate BOB1835).  Upon parking, Leblanc exited the driver's seat of the Chrysler and entered the front passenger's seat of the SUBJECT VEHICLE.  After approximately five minutes in the SUBJECT VEHICLE, both MOOREHEAD and Leblanc exited the vehicle and walked into the stairwell leading to SUBJECT LOCATION #1.

35.     Leblanc is a known associate of MOOREHEAD, and has a criminal history including illegal firearms and narcotics.  On February 25, 2020, the SSGTF arrested Leblanc from the Chrysler, at which time he had a plastic bag of more than 70 pills which were marked as Oxycodone 30s.  At the time of the meeting between Leblanc and MOOREHEAD described in the previous paragraph, Leblanc had three pending narcotics cases in Pierce County Superior Court.

36.     On April 7, 2020, the SUBJECT VEHICLE was observed unoccupied, parked outside SUBJECT LOCATION #2.  Location data from the cellular phone believed to be used by MOOREHEAD indicated the device was in, or near, SUBJECT LOCATION #2.

37.     Also on April 7, 2020, the Mercedes was observed unoccupied, parked outside SUBJECT LOCATION #1.  The vehicle appeared to have a flat tire, and several of the windows were broken.  The Mercedes was last observed on April 13, 2020, parked

HARRISON AFFIDAVIT/USAO # 2020R00016

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

in the same location as on April 7th, and still having a flat tire and broken windows.  The Mercedes was subsequently towed away after the apartment complex had posted a notice of intent to tow on its driver's door window.

38.     An analysis of location information for the cellular phone believed to be used by MOOREHEAD indicated the device spends the majority of time split between SUBJECT LOCATIONS #1 and #2.  An overview of the device's location from April 12, 2020 through mid-day on April 20, 2020, is consistent with physical surveillance observations which indicate MOOREHEAD is often at SUBJECT LOCATION #1 during the afternoon hours until late at night or early the next morning, and at SUBJECT LOCATION #2 from late at night or early in the morning until afternoon hours.

39.     The analysis of location information for the cellular phone also indicated the device made two short trips to Yakima, Washington during the collection period.  On March 28, 2020, the device was in Yakima for just under four hours, from approximately 5:30 p.m. until approximately 9:15 p.m.  On the return trip, the device appeared to pause for approximately 30 minutes in Federal Way, Washington before continuing south to SUBJECT LOCATION #1.  On April 14, 2020, the device was in the Yakima area for approximately four hours, from approximately 4:30 p.m. until approximately 8:30 p.m. The device appeared to travel directly to SUBJECT LOCATION #1 upon returning from Yakima.

40.     On April 15, 2020, at approximately 2:11 p.m., MOOREHEAD and a female in a scrubs uniform were observed exiting SUBJECT LOCATION #2.  The female got into the driver's seat of the SUBJECT VEHICLE, and MOOREHEAD got into the front passenger's seat.  The two drove southbound away from SUBJECT LOCATION #2, in the direction of SUBJECT LOCATION #1.  Approximately 13 minutes after departing SUBJECT LOCATION #2, the SUBJECT VEHICLE was observed departing the area of SUBJECT LOCATION #1.  The vehicle appeared to be occupied solely by the female driver.  At approximately 2:30 p.m., MOOREHEAD was observed walking out of the stairwell which leads to SUBJECT LOCATION #1.  He

entered the front passenger door of a parked Honda Accord, bearing Washington license plate BRD5354. After being inside the Honda for approximately seven minutes, MOOREHEAD exited and returned to the stairwell leading to SUBJECT LOCATION #1. The Honda, occupied only by the driver, then departed the Heatherstone Apartments parking lot.

41.    On April 17, 2020, the United States Postal Inspection Service (USPIS) provided information indicating recipients of mail to SUBJECT LOCATION #1 included the last name, "Moorhead," among others.

42.    Also on April 17, 2020, the USPIS provided further information indicating recipients of mail to SUBJECT LOCATION #2 included the last name, "Enick," among others.

43.    On April 24, 2020, the device believed to be used by MOOREHEAD again travelled to the Yakima, Washington area. Phone pings showed the device had departed Yakima after being there for approximately two and one-half hours, and was heading westbound on Interstate-90.

44.    On April 24, 2020, at approximately 6:27 p.m., a black Chevrolet Malibu bearing Washington license plate BNA1807 was observed driving by SUBJECT LOCATION #2 at an extremely slow rate of speed, and then departing the area. There were several people milling around the driveway of the house, and the SUBJECT VEHICLE was not present. It is suspected that one or both of those two facts caused the Malibu to depart the area. At approximately 6:33 p.m., the same Malibu entered the parking lot of the Heatherstone Apartments. JALEN MOOREHEAD was identified as the driver of the vehicle, and was the sole occupant. The location information for the device believed to be used by MOOREHEAD also appeared in the same area at the same time, after traveling back from Yakima. The registered owners of the Malibu are Tazanique Virgil and Cedric Silas. The vehicle MOOREHEAD was driving when he was stopped by WSP on October 29, 2019 and subsequently fled on foot, was an Enterprise Rental vehicle which was rented to Tazanique Virgil at the time of the stop.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

45.     After sitting alone in the Malibu for approximately 25 minutes, MOOREHEAD, wearing a black Adidas brand hooded sweatshirt and black sweatpants with red stripes up the legs, walked into SUBJECT LOCATION #1 carrying two bags. Both bags in his hands appeared to be reusable shopping bags.  One of the bags was black with the GNC logo on it, and the other bag was red.  At approximately 7:06 p.m., MOOREHEAD exited SUBJECT LOCATION #1 with nothing in his hands.  He walked out of sight towards the northeast corner of the apartment complex, away from both SUBJECT LOCATION #1 and the Malibu.  After being out of sight for approximately three minutes, he was observed walking back into SUBJECT LOCATION #1.  In one hand he carried a disposable cup.  At approximately 7:11 p.m., MOOREHEAD walked out of SUBJECT LOCATION #1 with only a cell phone in his hand.  He again walked out of sight towards the northeast corner of the apartment complex.  After being out of sight for approximately 10 minutes, he was observed walking back into SUBJECT LOCATION #1.  At approximately 7:23 p.m., a light colored Chevrolet Camaro, bearing Washington license plate BSL3813, pulled up in front of Building D.  An unknown male exited the front passenger seat of the Camaro and walked into SUBJECT LOCATION #1.  The Camaro drove one lap around the apartment complex, and then departed. Approximately nine minutes after leaving, the Camaro returned and again pulled up in front of Building D.  Approximately three minutes after returning, the same unknown male who previously exited the Camaro walked out of SUBJECT LOCATION #1 with an unknown item in his hand.  He entered the front passenger seat of the Camaro for less than one minute, and then exited with empty hands.  He returned to SUBJECT LOCATION #1, alone.  The Camaro then departed the area, occupied only by the driver.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

46.     Based upon my training and experience, and conversations with other experienced law enforcement agents and officers who have been involved in narcotics and firearms cases, I know the following:

HARRISON AFFIDAVIT/USAO # 2020R00016

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

47.     "Short stays" is a term used to describe a high rate of non-resident travel into and out of a location, for short durations of time, which is commonly observed at places where narcotics are being sold.

48.     The distribution of illegal narcotics is frequently a continuing activity lasting over months and years.  Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale.  Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product.  Drug traffickers often keep records of their illegal activities not only during the period of their drug trafficking violations, but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances.  The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.  Dealers often keep these records in their homes and in vehicles that they own, use, or have access to.

49.     It is common for drug dealers to conceal large quantities of currency, foreign currency, financial instruments, precious metals, jewelry, and other items of value which are proceeds from drug trafficking in their residences and in other storage areas associated with the residence, such as on-site storage lockers, garages, detached storage sheds, and parking stalls, or safes located on the property.

50.     Evidence of excessive wealth beyond an individual's outward means is probative evidence of the distribution of controlled substances.  Therefore, receipts showing the expenditure of large sums of money and/or the expensive assets are evidence of drug trafficking.  Drug traffickers commonly keep the expensive assets themselves and/or documentation of the purchase of the asset (receipts, warranty cards, etc.) in their homes, places of business, and in vehicles that they own, use, or have access to.

51.     It is common for drug dealers to maintain equipment and supplies (i.e.,

HARRISON AFFIDAVIT/USAO # 2020R00016

scales, packaging, masking agents) on hand over a lengthy period of time, even when they do not have any controlled substances on hand.  The aforementioned items are frequently maintained in the dealer's homes, places of business, stash houses or storage units, and in vehicles that they own, use, or have access to.

52.     Drug dealers often have some amount of inventory – namely, illegal drugs – stored in their homes, places of business, stash houses or storage units, and in vehicles that they own, use, or have access to.

53.     It is common for drug dealers to possess firearms and ammunition to protect their drugs, assets, and persons from hostile gangs, rival traffickers, other criminals, and from law enforcement.  Persons who purchase and possess firearms also tend to maintain the firearms and ammunition for lengthy periods of time.  Firearms can be acquired both legally and unlawfully, without official/traceable documentation. Persons who acquire firearms from Federal Firearms Licensees, through deliberate fraud and concealment, often will also acquire firearms from private parties and other sources unknown to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  Persons who, whether legally or illegally, purchase, possess, sell and/or transfer firearms or ammunition commonly maintain the firearms or ammunition on their person, at their residence or business, or in a motor vehicle which they own and/or operate.  Firearms or ammunition are often secreted at other locations within their residential curtilage, and the identification of these firearms will assist in establishing their origin.  Persons who purchase, possess, sell and/or trade firearms or ammunition commonly maintain documents and items that are related to the purchase, ownership, possession, sale and/or transfer of firearms, ammunition, and/or firearm parts, including but not limited to driver's licenses, telephone records, telephone bills, address and telephone books, canceled checks, receipts, bank records and other financial documentation on the owner's person, at the owner's residence or business, or in vehicles that they own, use, or have access to.  Additionally, these individuals often maintain holsters, spare magazines or speed loaders and other instruments to facilitate the use of firearms in furtherance of

criminal activity or acts of violence.

54.     It is common for members of drug trafficking organizations, in an attempt to disguise their identities and illegal activities, to use prepaid cellular telephones and prepaid long-distance calling cards.  Often the only way to connect a subject with a particular prepaid cellular telephone or calling card is to seize the phone or calling card from the trafficker, his residence, or his vehicle.  The aforementioned items are frequently maintained in the drug trafficker's residence, place of business, vehicle, or other areas they have access to.

55.     Drug dealers often carry many of the items described above – including (but not limited to) drugs, drug proceeds, firearms, cellular phones – on their person.

56.     Based upon this and other evidence, I believe there is probable cause to believe that evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and of Title 18, United States Code, Section 924(c)(1)(A) will be found in the SUBJECT LOCATIONS 1 and 2, and in the SUBJECT VEHICLE.

## CONCLUSION

57.     I submit that this Affidavit supports probable cause for a search warrant authorizing the search of the apartment located at 1907 105th Street S, #D201, Tacoma, Washington (SUBJECT LOCATION #1) the single family home located at 1811 S 90th Street, Tacoma, Washington (SUBJECT LOCATION #2), and, the blue 2006 Volkswagen Passat, VIN: WVWEK93C96P202376 (SUBJECT VEHICLE), as described herein and in Attachment A, for evidence and/or fruits of the commission of the crimes codified at Title 21, United States Code, Sections 841(a)(1) and 846 (distribution, possession with intent to distribute, and conspiracy to manufacture or distribute controlled substances), and Title 18, United States Code, Section 924(c)(1)(A) (carrying

1    or possessing a firearm in furtherance of drug trafficking), as set forth in Attachment B.

2

3

4

5                                                    _____
                                                     BENJAMIN HARRISON, Affiant
6                                                    Special Agent
                                                     Federal Bureau of Investigation
7

8

9            The above-named agent provided a sworn statement attesting to the truth of the

10   foregoing affidavit on the ___26th___ day of April, 2020.

11

12

13                                                   _____
                                                     J. RICHARD CREATURA
14                                                   United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

HARRISON AFFIDAVIT/USAO # 2020R00016                          UNITED STATES ATTORNEY
                                                              1201 PACIFIC AVENUE, SUITE 700
                                                              TACOMA, WASHINGTON 98402
                                                              (253) 428-3800

# ATTACHMENT A

## ITEMS TO BE SEARCHED

The property to be searched is:

    **a.** SUBJECT LOCATION #1: The apartment located at 1907 105th Street S, #D201, Tacoma, Washington.  The apartment is within a complex known as the Heatherstone Apartments. Building D is a three story building which is two-tone blue in color with white trim.  Apartment 201 of Building D is located on the second floor, on the West end of the building. The door of Apartment 201 is blue in color and has the number "201" in white on it;

    **b.** SUBJECT LOCATION #2:  The single family home located at 1811 S 90th Street, Tacoma, Washington.  The house is a two story building which is light blue in color with white trim.  The front door is white and faces south.  The number "1811" is in black to the right of the front door.

    **c.** SUBJECT VEHICLE:  A blue 2006 Volkswagen Passat, VIN: WVWEK93C96P202376, bearing Washington license plate BSA2916, which is registered to Taneisha Marie Enick.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# ATTACHMENT B

The items to be seized are the following, which constitute evidence of criminal activity consisting of the crimes codified at Title 21, United States Code, Sections 841(a)(1) and 846 (distribution, possession with intent to distribute, and conspiracy to manufacture or distribute controlled substances), and Title 18, United States Code, Section 924(c)(1)(A) (carrying or possessing a firearm in furtherance of drug trafficking).

a.  Controlled Substances, including but not limited to, methamphetamine, heroin, cocaine, marijuana, MDMA (ecstasy) and prescription narcotics.

b.  Any containers and packaging materials used to process, store, conceal and package and repackage those controlled substances, including scales, vacuum sealers, bags and baggies, plastic wrap, cardboard containers and other containers used to process, store, conceal and package and repackage controlled substances.

c.  Written records and documents concerning illegal drug distribution including: coded, cryptic, or plain text pay and owe records pertaining to sales of controlled substances, amounts due, amounts collected, or amounts paid for the illegal drugs, or their packaging and distribution.

d.  Personal and business books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the illegal distribution of controlled substances.

e.  Photographs or video movies of Jalen Moorehead, his co-conspirators, and the property and assets purchased with drug proceeds.

f.  Written business documents, ledgers, address books, telephone toll records, notes, messages, photographs, and video films, and encrypted memoranda indicating drug sales, debts, and criminal affiliates; wire transfer records, money orders, and cashier's checks; bank account records, including safe deposit box records and keys, checking and savings.

g.  Drug proceeds and evidence of proceeds including: United States currency, jewelry, money orders, and cashier's checks.

h.  Firearms and other various components related to firearms, such as ammunition, magazines and other ammunition storage devices, cleaning kits, spare parts for firearms, holsters, bullets, shell casings, primers, powders, reloading equipment, firearm boxes/cases, targets used for practice, lockboxes, trigger locks, scopes, laser sights and other gun-related optics, receipts, memoranda and/or notes pertaining to the acquisition, receipt, purchase, repair or disposition of firearms, books, diagrams, manuals, photographs (in print or on digital media), undeveloped film and videos, and gun safes.

i.      Any locked or closed containers believed to contain any of the above listed evidence.

j.      Indicia of occupancy, residency, and/or ownership of assets including, but not limited to, utility and telephone bills, rental records or payment receipts, leases, mortgage statements, and other documents.

k.      Evidence of storage unit rental or access.

l.      Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

m.      Cellular telephones, tablets, and other communications devices.

HARRISON AFFIDAVIT/USAO # 2020R00016

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800